NATIONAL LABOR RELATIONS
BOARD, Petitioner,

v.

ANCOR CONCEPTS, INC., Respondent,

Amalgamated Industrial Union Local
76B, IUE, AFL–CIO, Intervenor.

Docket No. 98–4140

United States Court of Appeals,
Second Circuit.

Argued Dec. 2, 1998.

Decided Jan. 15, 1999.

Margaret Gaines, Esq. National Labor Relations Board Office of the Regional Director New York, New York, for Petitioner.

Michael Delikat, Esq. Orrick, Herrington & Sutcliffe New York, New York, for Respondent.

Larry Engelstein, Esq. Washington, D.C., for Intervenor.

Before: VAN GRAAFEILAND, CABRANES and NOONAN *, Circuit Judges

NOONAN, Circuit Judge:

The National Labor Relations Board (the Board) seeks enforcement of its order directing Ancor Concepts, Inc. (Ancor) to reinstate and pay back pay to its five employees who were replaced during a strike in 1990. Amalgamated Industrial Union, Local 76B, International Union of Electrical Workers, AFL–CIO (the Union), to which the replaced employees belonged, has intervened in support of the Board's petition for enforcement. The Board interpreted two sentences of a letter from Ancor to the Union, read in isolation, to constitute violations of the National Labor Relations Act, 29 U.S.C. § 158(a) (the Act). Holding that the Board erred in its interpretation and therefore lacked substantial evidence for its conclusion, we deny the petition.

## FACTS

Ancor, located in Yonkers, New York, is a manufacturer of residential furniture such as tables and dressers which it sells to non-retail customers such as designers and architects. Its president is Roland F. Martini. His family has been in the furniture business for over sixty years; the family businesses have recognized the Union since 1945. Ancor itself is the successor corporation to a partnership, which in turn was the successor to a corporation engaged in the same business. In its present form Ancor came into existence on March 5, 1990. The new company operated under an agreement with the Union earlier negotiated with the Manufacturers Association of the industry. This agreement was to expire on August 31, 1990.

Martini met three times during the month of August with representatives of the Union to bargain for a successor agreement. At the last meeting the only unresolved issues were the Union's proposal for an additional sick day and/or a wage increase, responded to by Ancor's position that it could not afford an increase and needed an agreement to a wage freeze for six months after which the wage issue could be reopened. On September 20 these disagreements were restated in a meeting of Martini with the Union. On September 24 Ancor's employees—six "general helpers" whose work consisted of sanding, polishing and spraying the furniture—went on strike. The strikers were Raul Arango, Hector Cotto, Fernando Picherdo, Rafael Placencio, Gabriel Vargas, and Viterbo Avilia.

In the first week of the strike Avilia said he needed the money and that the Union would not object to his returning to work. He was reinstated the day after Martini learned of his desire to return. Between September 24 and October 5, five replacements were hired. There were no interviews. The replacements were simply told to report for work and informed of their hours and wages. They were taught on the job. Nothing was said as to the length of their prospective employment.

Some day in October or early November (the date is disputed), Elmo DeSilva, the business representative of the Union, encountered Martini on the loading platform and said the employees were ready to return to work on the same terms as those of the expired contract. Martini said he "wouldn't

---

* The Honorable John T. Noonan, Jr., of the United States Court of Appeals for the Ninth Circuit, sitting by designation.

take the men back until everything was settled."

On November 9, 1990 DeSilva wrote Martini as follows:

This is to restate the unconditional offer to return to work made by Amalgamated Industrial Union Local 76B on October 16, 1990, on behalf of your striking employees. All of the employees are prepared to return to work under the same terms and conditions of employment as existed under the expired contract, pending our negotiations of a Successor Agreement.

Please contact me as soon as possible concerning the employees [sic] return to work.

Ancor's lawyer, Michael Delikat, responded to this letter on November 29, 1990:

Your letter of November 9, 1990 to Ancor Concepts, Inc. (which was received by Anchor [sic] on November 16, 1990) has been referred to us as their attorneys for response.

First, our client categorically denies that any unconditional offer to return to work was made by your union on October 16, 1990, or at time [sic] prior to the Company's receipt of your letter dated November 9, 1990. As you probably know, one of the striking employees had earlier offered to return to work and he in fact was reinstated. At the present time, however, all other striking employee's positions have been filled by permanent replacements. If you would like the strikers [sic] names placed on a preferential recall list in the event of any openings, please advise the undersigned.

With respect to your apparent request to continue negotiations, it is the Company's position that a *bona fide* impasse in negotiations had been reached, which thereafter resulted in the strike. However, if you believe that there is sufficient flexibility in the union's position so that meaningful negotiations can occur at this time, please contact the undersigned to arrange a meeting.

## PROCEEDINGS

On November 8, 1990 the general counsel of the Board drew up charges against Ancor, stating (1) the employer has unlawfully refused to meet with the Union to negotiate a new contract; (2) the employer unlawfully attempted to bypass the Union and negotiate directly with the employees; (3) in October, Ancor unlawfully altered the terms and conditions of employment; and (4) "since on or about October 16, 1990 the employer has unlawfully failed and refused to reinstate the striking employees, despite the fact that an unconditional offer of return to work was made on their behalf."

The charges were filed on November 9, 1990. On December 19, 1990 the general counsel filed an amended complaint restating the same charges and only adding: "Since on or about October 16, 1990 the employer has unlawfully failed and refused to reinstate striking employees Fernando Picherdo, Hector Cotto, Rafael Placencio, Gabriel Vargas, and Raul Arango, despite the fact that an unconditional offer to return to work was made on their behalf."

A hearing on the charges was held on September 9, 1992. At this time Ancor stipulated that the replacements were only temporary. The Administrative Law Judge (the ALJ) held that Ancor had engaged in a lawful lockout without antiunion animus, noting, "There is nothing in this record to indicate that the bargaining history between respondent and the Union has been anything but amicable." On December 7, 1992 the ALJ dismissed the general counsel's complaint. On January 21, 1993, the general counsel filed exceptions to the ALJ's decision. Ancor responded and on March 12, 1993 the general counsel filed a reply brief. On May 20, 1997 the Board gave its decision.

Against the general counsel's exception the Board upheld the ALJ's finding that Martini was credible in his account of the negotiations. The Board further upheld against the general counsel's exception the ALJ's ruling that the employer's initiation of the lockout was lawful. The Board explicitly held that the employer did not need to use a magical set of words such as "lockout" when it was clear that in fact and in function the replacements were intended to bring economic pressure on the Union. The Board explicitly held, over the general counsel's exception,

that faced with the employees' unconditional offer to return to work without a contract, Ancor had refused to reinstate them in October "in support of its bargaining position." Acceptance of the Union's offer would have left Ancor "vulnerable to another economic strike during subsequent bargaining." Consequently, Ancor had a legitimate and substantial business reason for its refusal to take the employees back.

The Board, however, reversed the ALJ on the ground that Ancor's counsel's letter of November 29 was inconsistent with a lawful lockout because it stated that the replacements were permanent. The Board declared: "the November 29 announcement . . . could reasonably have caused the strikers [sic] confusion in evaluating their bargaining strength. Thus, for at least 21 months (i.e., from the Respondent's November 29 letter to the date of the hearing) the employees were in the dark about their status. Accordingly, for the reasons set forth above, we find that the Respondent violated Section 8(a)(3) and (1) by failing to reinstate the strikers on and after November 29."

The Board ordered full reinstatement and the making of the five employees whole for any loss in their earnings suffered "as a result of the discrimination against them from November 29, 1990." Back pay was ordered to be computed in accordance with *F.W. Woolworth Co.*, 90 NLRB 289 (1950) (back pay to be computed without reference to employee's earnings during entire period of discriminatory discharge).

The Board seeks enforcement of its order.

### ANALYSIS

For over thirty years it has been established law that the lockout is a legitimate move by an employer in the face of a strike. *American Ship Bldg. v. NLRB*, 380 U.S. 300, 85 S.Ct. 955, 13 L.Ed.2d 855 (1965). Only if in the use of this legitimate tactic the employer violates § 8(a)(1) of the Act by discriminating against its employees for exercising their right under § 7 to bargain collectively and to act together in mutual support, or violates § 8(a)(3) by discriminating in regard to hire in order to discourage membership in a union, does this legitimate economic tactic turn into an unfair labor practice. The Board's order must be sustained if there is substantial evidence supporting its conclusion that Ancor did violate these provisions of law.

The entire evidence supporting the Board's conclusion consists in two sentences from the November 29, 1990 letter of Ancor's counsel: "At the present time, however, all other striking employee's [sic] positions have been filled by permanent replacements. If you would like the strikers [sic] names placed on a preferential recall list in the event of any openings, please advise the undersigned." The Board, holding that this description of the replacements as permanent confused the employees, deemed the creation of this confusion to violate § 8(a)(1) and (3). The Board was wrong in its reading of the November 29 letter.

The force of these two sentences is qualified by the final sentence of this letter: "However, if you believe there is sufficient flexibility in the Union's position so that meaningful negotiations can occur at this time, please contact the undersigned to arrange a meeting." This conclusion, emphatically put at the letter's end, demonstrates that nothing was final in Ancor's position. The letter, moreover, cannot be read as an isolated communication. It must be read in terms of the two communications that preceded it: DeSilva's letter of November 9 and DeSilva's conversation with Martini in late October or early November. Martini had made clear in this conversation that he was unwilling to take the five employees back until a new contract had been agreed to; he was not going to take them back on the old terms without assurance that they would not walk out the next week when a contract had not been agreed on. The November 29 letter was an emphatic restatement of Martini's position that without an agreement there would be no reinstatement. The Union, to whom the letter was addressed, could not have been confused: Ancor was ready to negotiate if the Union was.

The Board's general counsel and the Union coordinated their tactics, with the general counsel on November 8 drafting charges that

Ancor had refused to reinstate the employees in October, followed by the general counsel filing the charges on November 9, the same date that DeSilva wrote his letter claiming that he had made an unconditional offer to return. The general counsel's theory, reflected not only in the November 9 charges but in the amended charges of December 12, was that Ancor had committed unfair labor practices by refusing DeSilva's oral offer. This theory was repudiated both by the ALJ and by the Board itself. Ignoring the actual charges, the Board found a new basis unmentioned in the complaint or amended complaint.

The Board does not have a substantial basis for its decision. Isolating the two quoted sentences from the November 29 letter and treating them without reference to the whole of the letter and the whole of the communications that preceded the letter, the Board erred.

In oral argument of the case the court expressed surprise at the delay of 4½ years between the ALJ's decision and the Board's reversal of the decision—a delay that was not without consequences in its long deferment of back wages if the Board were upheld and the mounting liability of the company during the years in which it believed it had been exonerated by the ALJ. We asked the general counsel to explain the delay. The answer we have received is that "this case involved a difficult question of law"; that, moreover, the Board's membership was changing, sometimes its membership was less than the statutory five members, and, in all, eight members of the Board had at various times taken up this case in the effort to decide it.

A difficult question of law the key to the delay! Certainly not the credibility of Ronald Martini, already established by the finding of the ALJ. Hardly the lawfulness of a lockout, long ago established by the United States Supreme Court; improbably the need to use magic words to describe the lockout; clearly not the reasonableness of Ancor's refusal to reinstate without a contract. The only remaining legal question was whether a reference to permanent replacements in the course of a month of negotiations made the lockout unlawful. Four and one half years

were devoted to this question, resulting in an opinion which devotes three paragraphs to its resolution. The case was finally decided by a Board consisting of three members, two of them recess appointments. A good reason has not been given for the delay.

No decisionmaking body is totally immune from the dilatory virus, and delay is sometimes the too human way of grappling with a thorny issue of policy. Nonetheless, the Board stands out as a federal administrative agency which has been rebuked before for what must strike anyone as a cavalier disdain for the hardships it is causing. We have on other occasions indicated that extraordinary delay of this kind will itself be reason to refuse to enforce an order of the Board. *See Emhart Indus., Hartford Div. v. NLRB,* 907 F.2d 372, 378 (2d Cir.1990). Although we have no occasion in this case to apply this doctrine, we call it to the Board's attention as a reminder that, whatever its internal problems, the Board has a duty to act promptly in the discharge of its important functions.

The petition for enforcement is DENIED.