**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 13a0207n.06

No. 12-1455

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

**FILED**
*Feb 28, 2013*
DEBORAH S. HUNT, Clerk

| | |
|---|---|
| INTERNATIONAL UNION, UNITED AUTOMOBILE, AEROSPACE AND AGRICULTURAL IMPLEMENT WORKERS OF AMERICA, UAW; UAW, LOCAL 1832, <br><br>     Petitioners, <br><br> v. <br><br> NATIONAL LABOR RELATIONS BOARD, <br><br>     Respondent. | ON PETITION FOR REVIEW OF AN ORDER OF THE NATIONAL LABOR RELATIONS BOARD |

Before: COOK, WHITE, and DONALD, Circuit Judges

COOK, Circuit Judge. Unions challenge the National Labor Relations Board's ("the Board") conclusion that an employer's improper withholding of bargaining information did not render a lockout unlawful under the National Labor Relations Act. Previously, an administrative law judge (ALJ) concluded otherwise. Because substantial evidence supported the Board's judgment, we DENY the petition.

I.

This petition arises from the tumultuous negotiations for a new collective bargaining agreement at the Madison, Tennessee truck assembly plant (the "Madison plant") operated by

PACCAR, Inc., d/b/a Peterbilt Motors Company ("Peterbilt"). We briefly highlight the relevant events.

Discussions began in April 2008, approximately two months before the prior collective bargaining agreement (CBA) was to expire. Peterbilt proposed a number of "economic" and "noneconomic" changes to the CBA, including a new tiered wage system; higher employee healthcare contributions; the designation of senior "key operators" with employees structured into teams; and greater outsourcing authority for management. During the course of these meetings, Peterbilt representatives commented on the Madison plant's high labor costs, prompting union negotiators to request information, on or about June 19, regarding operating costs at the employer's other facilities. After resisting the unions' initial requests for this information, Peterbilt refused it on July 16 claiming that its proposals relied on the wages and benefits offered by other Nashville-area employers, and not the operating costs of its other facilities. After weeks of fruitless negotiations, Peterbilt locked out the employees on June 23, 2008. The parties ceased negotiations in August, and the Madison plant closed for good in 2009.

After the unions filed an unfair labor practice charge against Peterbilt, the Board's Regional Director filed a complaint alleging unlawful nondisclosure of relevant bargaining information and unlawful lockout under the Act. *See* 29 U.S.C. § 158(a)(1), (a)(5), (d) (prohibiting employers from "interfer[ing] with, restrain[ing], or coerc[ing] employees in the exercise of" their collective-bargaining rights and requiring good-faith negotiations); *NLRB v. Truitt Mfg. Co.*, 351 U.S. 149, 153

(1956) (holding that the Act's duty of good faith includes the disclosure of information relevant to the employer's bargaining position); *Am. Ship Bldg. Co. v. NLRB*, 380 U.S. 300, 308–09 (1965) (distinguishing between lawful lockouts used "solely as a means to bring economic pressure to bear in support of the employer's bargaining position," and unlawful lockouts "used . . . as a means to injure a labor organization or to evade [the employer's] duty to bargain collectively"). The ALJ agreed on both counts, finding that Peterbilt's refusal to divulge comparative costs violated the Act and rendered its lockout unlawful as of July 16, 2008.

On appeal, a three-member panel of the Board sustained the ALJ's unlawful nondisclosure judgment,[1] but overruled the unlawful-lockout finding, holding that the withheld information "did not materially affect the progress of the negotiations." *PACCAR, Inc.*, 357 N.L.R.B. No. 13, 2011 WL 2784214, at *5–6 (2011); *cf.* 29 U.S.C. § 158(a)(1); *Globe Bus. Furniture*, 290 N.L.R.B. 841, 841 n.2 (1988) (finding lockout unlawful where the employer withheld "crucial information central to bargaining"), *enforced* 889 F.2d 1087 (6th Cir. 1989) (unpublished table decision). The unions timely petition for review of the Board's adverse judgment on the lockout claim, arguing that the Board (1) ignored substantial evidence that the requested information was the sticking point of the negotiations, and (2) improperly discounted the ALJ's credibility findings.

II.

---

[1]One member dissented from the Board's unlawful nondisclosure finding.

Despite its disagreement with the ALJ, we review the Board's judgment for substantial evidence. *Exum v. NLRB*, 546 F.3d 719, 724–25 (6th Cir. 2008). Under this standard, "[t]he Board's findings of fact and its application of the law to those facts are *conclusive* 'if supported by substantial evidence on the record considered as a whole.'" *United Paperworkers Int'l Union v. NLRB*, 981 F.2d 861, 865 (6th Cir.1992) (per curiam) (quoting 29 U.S.C. § 160(e)). "Evidence is substantial when it is adequate, in a reasonable mind, to uphold the [NLRB's] decision." *Pleasantview Nursing Home, Inc. v. NLRB*, 351 F.3d 747, 752 (6th Cir. 2003) (internal quotation marks omitted).

The following evidence reasonably supported the Board's conclusion here:

> [T]he parties were far apart in bargaining on issues both parties deemed to be fundamentally important. The parties continued to meet and bargain after the lockout began and after the Respondent refused to provide the requested information. There is no evidence that the outstanding information request was a stumbling block to bargaining. Although the Union reiterated its request on July 8, there is no evidence that it ever claimed, after the Respondent refused on July 16 to provide the requested information, that it was precluded from evaluating the Respondent's proposals or formulating its own counterproposals because it lacked the requested information. In fact, the parties held three additional bargaining sessions after July 16, and there is no evidence that the Union even raised the outstanding information request as an issue at any of these sessions. In a communication to its members after the lockout began, the Union claimed there were over 150 issues that remained to be resolved, but it did not claim that the Respondent was failing to provide necessary information.

*PACCAR, Inc.*, 2011 WL 2784214, at *6. The unions generally do not dispute these findings, conceding that "as of June 22, 2008 [the day before the lockout], there were many unresolved issues

on the table." Still, they challenge the Board's claim that they failed to present evidence that the subject of the withheld information arose at post-lockout bargaining sessions.

They raised a similar objection to the Board in a motion for reconsideration, citing testimony that their negotiator, Tim Bressler, told Peterbilt representatives at the final bargaining sessions (August 19 and 20, 2008) that the withheld information "would make a difference" to the union's assessment of bargaining proposals. The Board denied reconsideration, noting that the ALJ did not credit the cited testimony, and that the testimony did not undermine its conclusion:

> At best, the Union has shown that it made a few passing references to the outstanding information request as being something that would "make a difference" with respect to the Respondent's wage and benefit proposals. Viewing the record as a whole, as we must, the fact remains however that the parties were far apart on many economic and noneconomic issues, including not only wages and benefits, but also a management rights clause, health and safety issues, and the designation of (and superseniority for) key operators. The outstanding information did not form the basis of the Respondent's proposals on any of those other matters and was not central to resolving the parties' differences.

*PACCAR, Inc.*, No. 26-CA-23225, 2011 WL 6394140 (NLRB Dec. 20, 2011).

Even accepting that the unions made "passing references" to the withheld information during these negotiations, that does not demonstrate that the nondisclosure impeded the negotiations or otherwise materially affected their progress. Tellingly, despite ample record evidence of philosophical objections to Peterbilt's noneconomic proposals, the unions point to no evidence

during the relevant post-lockout negotiation period—July 16 to August 20, 2008[2]—that they objected to these proposals on account of the withheld information.

Instead, they rely on the trial testimony of union representative Terry Bolte, who claimed that the withheld information "affect[ed] every issue," because "all" of the outstanding proposals (economic and noneconomic) were "intertwined." But his *post hoc* speculation about the significance of the withheld information does not prove that it served as a sticking point *during* post-lockout negotiations, and thus does not undermine the Board's determination.

Finally, the unions point to the ALJ's credibility determination accepting their witnesses' description of a June 19, 2008 letter requesting the withheld information. (Peterbilt's witnesses had disputed this claim, arguing that they understood the document to be a "sample" information request.) But, as the Board noted, the ALJ did not specifically credit the unions' vague testimony about Bressler's later comments at the August meetings. Indeed, it does not appear that the ALJ made credibility findings about specific post-lockout events. Regardless, as explained above, the unions offer little evidence that the lack of information materially affected the post-lockout negotiations, and substantial evidence supports the Board's view that it did not. Under the circumstances, the Board could reasonably conclude that Peterbilt did not unlawfully use the lockout

---

[2]Because the administrative complaint did not allege unlawful lockout from inception, we look to the date that Peterbilt officially denied the unions' request for the withheld information.

"to injure [the unions] or to evade [its] duty to bargain collectively." *See Am. Ship Bldg. Co.*, 380

U.S. at 308–09.

III.

We DENY the petition.