**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**August 27, 2014**

**Elisabeth A. Shumaker**
**Clerk of Court**

---

TEAMSTERS LOCAL UNION NO.
455,

Petitioner,

v.

NATIONAL LABOR RELATIONS
BOARD,

Respondent.

No. 12-9519

---

HARBORLITE CORPORATION,

Intervenor.

---

**PETITION FOR REVIEW OF AN ORDER OF**
**THE NATIONAL LABOR RELATIONS BOARD**
**(NLRB No. 27-CA-21386)**

---

Michael J. Belo, Berenbaum Weinshienk PC, Denver, Colorado, for Petitioner
Teamsters Local Union No. 455.

Zachary Henige, Washington, D.C. (Robert J. Engelhart, Supervising Attorney,
Amy H. Ginn, Attorney, Lafe E. Solomon, Acting General Counsel, Celeste J.
Mattina, Deputy General Counsel, John H. Ferguson, Associate General Counsel,
and Linda Dreeben, Deputy Associate General Counsel, on the brief) for
Respondent National Labor Relations Board and Stuart F. Delery, Principal
Deputy Assistant Attorney General, Beth S. Brinkmann, Deputy Assistant
Attorney General, Douglas N. Letter, Scott R. McIntosh, Joshua P. Waldman,
Mark R. Freeman, Sarang V. Damle, Melissa N. Patterson, and Benjamin M.

Shultz, Civil Division, United States Department of Justice, Washington, D.C., filed a supplemental brief for Respondent National Labor Relations Board.

J. Thomas Kilpatrick, Alston & Bird LLP, Atlanta, Georgia (Wes R. McCart with him on the briefs) for Intervenor Harborlite Corporation.

Before **GORSUCH, EBEL**, and **O'BRIEN,** Circuit Judges.

**GORSUCH**, Circuit Judge.

What happens when company and union can't come to terms? Sometimes the union might wish to strike, but sometimes not. What happens then — when the union prefers work to continue? Under Supreme Court precedent employers are often permitted to "lock out" the employees and hire temporary replacement workers until a collective bargaining agreement is reached. But what happens if the employer threatens to hire *permanent* replacements? Does this violate the law, even if the employer doesn't carry through on the threat and quickly retreats from it? The National Labor Relations Board thought so. It ordered Harborlite to desist from future threats and to post a notice promising its employees that much. But the Teamsters wanted the Board to go further — to hold not only the threat unlawful but also the entire lockout, and to award the employees backpay. This much the Board declined to do, finding that the company's short-lived threat didn't materially affect negotiations during the lockout, which in any case ended

with Harborlite retreating.  It is this decision the union now asks us to undo, but one we find we cannot.

*

Given recent events, one might wonder whether we can even reach the merits of the union's challenge.  We found ourselves wondering just that after several circuits last year declined to enforce NLRB orders on the ground the Board lacked the quorum required by law to issue any order at all.

The controversy began when the President appointed individuals to serve on the NLRB without the advice and consent of the Senate.  The President argued that his appointments were lawful under the Constitution's Recess Appointments Clause — because they were made during times when the Senate was either adjourned temporarily or operating in *pro forma* sessions.  A number of courts disagreed, however, thinking that the Clause authorizes appointments only when the Senate is between sessions, not during intra-session breaks.  Some held, too, that the President's recess appointment power permits him to fill merely those positions that become vacant during an inter-session recess.  These same courts concluded that, without the unlawfully appointed members, the Board couldn't meet its quorum requirement or the statutory requirement that its decisional panels consist of three members.  *See, e.g.*, *Noel Canning v. NLRB*, 705 F.3d 490 (D.C. Cir. 2013); *NLRB v. New Vista Nursing & Rehab.*, 719 F.3d 203 (3d Cir. 2013); *cf.* U.S. Const. art. II, § 2, cl. 3.

We worried that a similar problem might be lurking in our case. When it decided our case, after all, the Board had just three members, and one of these — Craig Becker — was appointed without Senate confirmation during an intra-session Senate recess. Indeed, the Third Circuit had specifically declared his appointment invalid. *See New Vista Nursing & Rehab.*, 719 F.3d at 221. But with some other courts voicing disagreement and the Supreme Court agreeing to tackle the issue, we thought the prudent course to put this case on hold until the Court could speak.

The Court has now spoken and its guidance dispels our main worries. In *NLRB v. Noel Canning*, the Court clarified that the President's recess appointment powers extend to filling vacancies that arise during a Senate session and extend to filling vacancies during intra-session recesses of a "sufficient" duration. 134 S. Ct. 2550, 2567, 2573 (2014). The Court did go on to hold several NLRB members' appointments unlawful because they occurred during a three-day intra-session recess that was "too short to trigger the President's recess-appointment power." *Id.* at 2574. But in light of historical practice the Court held that only recesses lasting fewer than ten days are "presumptively too short." *Id.* at 2567. Mr. Becker, by contrast, was appointed during an intra-session recess exceeding two weeks — one lasting from March 26 to April 12, 2010. 156 Cong. Rec. S2180 (daily ed. Mar. 26, 2010) (statement of Sen. Kaufman); *New Vista*, 719 F.3d at 213. So it is that, after *Noel Canning*, there seems little reason to doubt

- 4 -

the validity of the appointment before us and the power of the Board to issue the order under review.

To be sure, the Supreme Court stopped short of validating every appointment made during a recess ten days or longer. One might even read the majority opinion as leaving the door open for future challenges to some such appointments: from the proposition that shorter than ten days is *usually* too short it doesn't follow that ten days or longer is *always* long enough. *Cf. Noel Canning*, 134 S. Ct. at 2599 (Scalia, J., concurring in the judgment).

But whatever questions may linger along these lines, we see no reason to venture any answers here. The ably represented parties didn't question the Board's authority in administrative proceedings and even now don't seek to press the issue. That's enough to end the matter. We don't often raise arguments to help litigants who decline to help themselves, especially when the litigants have consciously waived the arguments by steering us away from them and toward the merits instead. *See Wood v. Milyard*, 132 S. Ct. 1826, 1834 (2012); *Richison v. Ernest Grp., Inc.*, 634 F.3d 1123, 1127-28 (10th Cir. 2011); *see also* 29 U.S.C. § 160(e); *Pub. Serv. Co. of N.M. v. NLRB*, 692 F.3d 1068, 1076 (10th Cir. 2012).

Of course like most rules this waiver rule bears its exceptions. If, for example, we lacked jurisdiction to review the Board's decision we would have to admit it regardless of the parties' wishes. Here, though, our jurisdiction depends on the National Labor Relations Act, which confirms this court's authority to

entertain the union's petition even if there happens to be some defect in the Board's composition. The statute authorizes courts of appeals to review "final order[s]" of the Board and to "enforc[e], modify[], . . . or set[] aside" any Board order as the law requires. 29 U.S.C. § 160(f). In assessing whether a particular agency action is final, we ask "whether the action's impact is direct and immediate, whether the action marks the consummation of the agency's decisionmaking process, and whether the action is one by which rights or obligations have been determined." *Pub. Serv. Co. of Colo. v. U.S. EPA*, 225 F.3d 1144, 1147 (10th Cir. 2000) (brackets omitted). All of those things are present here: the Board's order denied the union's requested relief, marked the end of the road for the agency's consideration of the issue, and purported to decide the union's rights under the NLRA. The order could be invalid and issued without authority, but none of that would destroy *our* jurisdiction to hear the case. Indeed, it would be passing strange for an ultra vires agency action to be better insulated from judicial review than one issued under lawful authority. And so whatever the constitutional status of Mr. Becker's appointment, nothing prevents us from proceeding to decide the merits of our case. *See, e.g.*, *D.R. Horton, Inc. v. NLRB*, 737 F.3d 344, 351 (5th Cir. 2013) ("[T]he validity of Member Becker's recess appointment is not a matter we must address for jurisdictional reasons."); *cf. Freytag v. Comm'r*, 501 U.S. 868, 878-79 (1991) ("Appointments Clause

objections to judicial officers" are "nonjurisdictional structural constitutional objections").[1]

*

The union's challenge on the merits arises from a routine collective bargaining dispute. When negotiations between the Teamsters and Harborlite reached an impasse, management told the union that unless it would agree to the company's final offer it would lock out union members and "immediately begin hiring permanent replacements for locked out employees." Several days later — and (not incidentally) after the union initiated legal action — the company (sort of) changed its tune. While it continued the lockout and began hiring new workers, it said that "until further notice" these workers would only be temporary. Harborlite insisted it had a right to hire permanent replacements but promised to refrain from doing so — for the time being at least — "in an effort to show that [it was] being more than reasonable." And in fact, in three months' time the company let its temporary workers go and permitted union members to return to

---

[1] The court might yet have *discretion* afforded by statute to decide whether the Board was properly composed even though the question isn't jurisdictional and even though the parties never raised it. The D.C. Circuit held as much in *Noel Canning*, 705 F.3d at 497-98, and we see no occasion to disagree with its opinion on that score. But the lack of any advocacy — and after the Supreme Court's *Noel Canning* instruction, any authority — suggesting a problem with Mr. Becker's appointment, together with the ease with which the merits of this case can be resolved, conspire to convince us that *sua sponte* intervention in this case isn't appropriate.

work even though the union never did accept the company's purportedly final offer.

The Board agreed with the union that the act of threatening to hire permanent replacement workers violated 29 U.S.C. § 158(a)(1), a provision of the NLRA that says employers may not "interfere with, restrain, or coerce employees in the exercise of" their collective bargaining rights. *See Harborlite Corp.*, 357 N.L.R.B. No. 151, at 1-2 (Dec. 22, 2011). The Board ordered Harborlite to cease making such threats and to post a notice admitting its violation of the law — punishments the company acceded to voluntarily. So far so good in the union's eyes — but not far or good enough. As the union sees things, Harborlite's lockout was *itself* unlawful and this entitles its union employees to back pay.

Like the Board before us, we cannot agree. The Supreme Court has long instructed that an employer may, consistent with the NLRA, lock out employees during collective bargaining negotiations to "bring[] economic pressure to bear in support of [its] legitimate bargaining position." *Am. Ship Bldg. Co. v. NLRB*, 380 U.S. 300, 318 (1965); *see also Serv-Air, Inc. v. NLRB*, 395 F.2d 557, 562 (10th Cir. 1968). It is equally settled that during a lawful lockout an employer may hire temporary replacement employees to get its work done. *See NLRB v. Brown*, 319 F.2d 7, 11 (10th Cir. 1963), *aff'd*, 380 U.S. 278 (1965); *Harter Equip., Inc.*, 280 N.L.R.B. 597 (1986), *review denied sub nom. Local 825, Int'l Union of Operating*

*Eng'rs v. NLRB*, 829 F.2d 458 (3d Cir. 1987).  We see no way we might now permissibly overturn such long-settled precedent.

To be sure, the union doesn't ask us to do quite so much.  Its position is a bit more nuanced than that:  it doesn't dispute that lockouts can be lawful or that companies may hire temporary workers during lockouts.  Instead, it contends a previously lawful lockout *becomes* unlawful when a company threatens to hire not temporary workers but permanent ones.  It is Harborlite's initial (if quickly withdrawn) threat to hire permanent replacement workers, the union says, that tainted its otherwise lawful lockout and rendered it unlawful.

This argument hinges on an uncertain premise.  Implicit in the union's position is the belief that hiring permanent workers during a lockout, or threatening to do so, violates the NLRA.  But that belief isn't obviously true.  What if an employer is tempted toward permanent replacement not to "interfere with, restrain, or coerce" employees seeking to exercise their collective bargaining rights but for entirely licit business reasons — expecting, for example, that better qualified replacements might be found through a promise of more-than-merely-temporary employment?  *Cf. Medite of N.M., Inc. v. NLRB*, 72 F.3d 780, 788 (10th Cir. 1995) ("allowing replacement workers to be kept on permanently" helps give "the replacement workers adequate incentive to take replacement jobs").  Consider, as well, that employers are permitted to hire permanent replacements for striking employees.  *See, e.g.*, *NLRB v. Int'l Van*

*Lines*, 409 U.S. 48, 50 (1972); *NLRB v. Fleetwood Trailer Co.*, 389 U.S. 375, 379 (1967); *NLRB v. MacKay Radio & Tel. Co.*, 304 U.S. 333, 345-46 (1937).  If that doesn't "interfere with, restrain, or coerce" employees exercising their collective bargaining rights during a strike, how does the same conduct do so during a lockout?  Doesn't labor law generally recognize employees' right to strike for the sake of a better deal no less than their right to hold out against an employer's lockout?  *Cf.* 29 U.S.C. § 163 ("Nothing in this subchapter, except as specifically provided for herein, shall be construed so as either to interfere with or impede or diminish in any way the right to strike . . . .").  Perhaps there are answers to these statutory interpretation questions, but they are not insignificant ones.  Indeed, the Supreme Court has twice noted but declined to resolve them.  *See Am. Ship Bldg. Co.*, 380 U.S. at 308 n.8; *NLRB v. Brown*, 380 U.S. 278, 292 n.6 (1965).

Happily, to decide this particular case we need not attempt any answers of our own either.  Neither need we evaluate the Board's views on the matter or the amount of deference owed them.  Even granting the union its premise — even assuming without deciding that threatening to hire permanent replacement workers *itself* violates the NLRA — it doesn't necessarily follow that such threats *also* and *automatically* turn an otherwise lawful lockout unlawful and in this way generate a second violation of the statute.

Why not?  As the Board explained, there is no evidence in our record that the hastily made and quickly withdrawn threat did anything to harm the parties'

collective bargaining efforts or impeded resolution of their labor dispute. Given this, the Board declared that, while the threat itself may be unlawful, it didn't transform the lockout itself into an act that "interfere[d] with, restrain[ed], or coerce[d]" collective bargaining employees. In reaching this conclusion, the Board pointed to and relied on its decision in *Peterbilt Motors Co.* — a case in which the Board held that an employer's unlawful conduct during an otherwise lawful lockout won't render the lockout itself unlawful so long as the conduct doesn't "materially affect the progress of negotiations." 357 N.L.R.B. No. 13, at 4 (July 15, 2011), *review denied sub nom. UAW v. NLRB*, 516 F. App'x 488 (6th Cir. 2013).

Before us, the union doesn't argue that the Board's holding — that an unconsummated and rapidly withdrawn threat to hire permanent replacement workers must materially affect the progress of negotiations before potentially rendering an otherwise lawful lockout unlawful — is inconsistent with the NLRA. We have no claim before us that the Board's view on this score defies the statute under which it operates. Instead, the union's theory is again more nuanced and a good deal more modest too. The union argues only that the Board's rule and its application in this case defy the Board's own administrative precedents.

To be sure, the union here touches on an important principle. It is beyond dispute that an administrative agency "may not . . . depart from a prior policy *sub silentio* or simply disregard rules that are still on the books." *FCC v. Fox Tel.*

- 11 -

*Stations, Inc.*, 556 U.S. 502, 515 (2009). The Administrative Procedure Act's ban on arbitrary agency action demands more than that. *Id.* (citing 5 U.S.C. § 706(2)(A)). Surely the most basic of law's guarantees, due process and equal treatment, do too. And judicial attention to these demands is, if anything, especially important where (as in labor law) the governing statute speaks in indeterminate terms and the agency's decisions rarely derive from "any specific statutory language at all." Catherine L. Fisk & Deborah C. Malamud, *The NLRB in Administrative Law Exile: Problems with Its Structure and Function and Suggestions for Reform*, 58 Duke L.J. 2013, 2039 (2009).

In our case, however, we just cannot discern any inconsistency in the Board's treatment of its own precedent. The union says its silver bullet is *Ancor Concepts, Inc.*, 323 N.L.R.B. 742 (1997), *enforcement denied on other grounds*, 166 F.3d 55 (2d Cir. 1999). But in *Ancor* the Board found a lockout illegal only after an employer told his locked-out employees that he *had* permanently replaced them. *See id.* at 744-45. By its very terms, then, nothing in *Ancor* speaks to the effect of a threat to hire permanent replacements that the employer does *not* claim to have acted on — let alone one the employer soon pledges *not* to act on. For similar reasons, the union is wrong to claim the Board's decision betrays an inconsistency with its decisions in *Globe Business Furniture, Inc.*, 290 N.L.R.B. 841 (1988), and *KLB Industries, Inc.*, 357 N.L.R.B. No. 8 (July 26, 2011). The union reads both cases as holding lockouts unlawful because of the employer's

unremedied NLRA violations. But both cases involved employer misconduct that materially impeded collective bargaining negotiations — the withholding of critical information from unionized employees. *See Globe Bus.*, 290 N.L.R.B. at 841 n.2; *KLB Indus.*, 357 N.L.R.B. No. 8, at 5. Meanwhile, the Board found in this case that Harborlite's threat didn't have a material impact on negotiations and that finding is supported by substantial (indeed, uncontested) record evidence.

Having failed to suggest any inconsistency by the Board so far, the union shifts gears, directing us to an altogether different line of administrative precedent it says the Board failed to abide — *Passavant Memorial Area Hospital*, 237 N.L.R.B. 138 (1978), and *Grondorf, Field, Black & Co.*, 318 N.L.R.B. 996, 996-97 (1995). In those cases, the Board held that an employer seeking to avoid liability through the "repudiation or disavowal of [its] coercive conduct" should at a minimum "give assurances to employees that in the future their employer will not interfere with the exercise of their" rights. *Passavant*, 237 N.L.R.B. at 138-39. But this line of precedent is no more helpful than the last to the union's cause. True, in our case the Board did impose liability on Harborlite for its threat to hire permanent replacements, holding that the threat violated § 158(a)(1) because the company didn't repudiate it in the particular fashion *Passavant* specifies. And to that extent, we readily acknowledge parallels between our case and the precedent the union cites. But the Board's holding in this particular isn't one the company or the union disputes. Rather, the question before us is whether

the company's threat *also* had the *additional* knock-on effect of rendering an otherwise lawful lockout unlawful. Precisely nothing in *Passavant* or *Grondorf* speaks to that question, either expressly or by necessary implication. The union's cases establish that an insufficiently repudiated violation of the statute still counts as a violation; they do not establish that an insufficiently repudiated violation causes a second and independent violation of the statute.

At the end of the day, the union musters no justification for forcing the Board to act where it has chosen not to act. In saying this much we don't mean to suggest we endorse every jot and tittle in the administrative precedents we've discussed. To resolve this case, we need and do hold only that the Board's refusal to order additional remedial measures wasn't arbitrary in light of the administrative precedents the union has identified. The petition for review is denied.